UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CRIMINAL NO. 05-30026-MAP |
| ) | |
| CARLOS SALVATE ) | |

**PRELIMINARY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

FACTS AS ALLEGED BY THE GOVERNMENT

On September 21, 2004 Detective Sean Shattuck of the Holyoke Police Department received a phone call from Detective Duke of the Western Massachusetts Gang Task Force. Detective Duke stated on the phone that he received information from a cooperating individual that five or six males, all reputed Flat Bush Street gang members were leaving the Flats area of the City of Holyoke and going to the area of S. Bridge Street and Hamilton Street to attempt to shoot an unknown individual. Detective Duke reported that the cooperating individual identified one of the gang members as a person known as "Tito". Detective Duke reported that the cooperating individual stated that the gang members were armed with a handgun and were traveling in a small tan or white four-door vehicle. Detective Duke reported that the cooperating individual stated that one of the gang members was wearing a red t-shirt and that "Tito", who was with the other gang members, was running the arrangements. At the time, the Holyoke Police were aware of an individual named Luis Ramos, of 86 N. East Street, who was a Flat Bush Street gang member, who used the alias "Tito."

At 9:13 pm on September 21, 2004, members of the Holyoke Police Department reported to Chestnut Street and Sargeant Street for a report of a shooting with injuries. During the course of the initial investigation of this incident, Captain Higgins of the State Police Detective Unit, received information at the Holyoke Hospital Emergency Room that members of the Flat Bush street gang were shooting at members of the Latin King street gang in retaliation for an assault that occurred a few days ago.

Detectives Shattuck, Jones and Reardon responded to the area of S. Bridge Street and Hamilton Street and were unable to locate the vehicle or individuals described to Detective Duke by the cooperating individual. The detectives then proceeded to the Flats area of Holyoke.

While en route to the Flats, Detective Jones received a call from Detective Duke. Detective Duke stated that the cooperating individual was on a separate phone stating that the males in the small four-door vehicle just returned and parked their vehicle on N. East Street, near Dwight Street.

Detectives Shattuck, Jones and Reardon who were already in the Flats area responded to N. East Street. As the detectives turned onto N. East Street from E. Dwight Street they observed five males standing on N. East Street, across from 78 N. East Street. The detectives observed that one of the males was Luis Ramos and that one of the males was wearing a red t-shirt.

As the detectives continued north on N. East Street, in an unmarked vehicle, the group of males split up and began walking north. Two males, Luis Ramos and Jose Burgos, were on the west sidewalk. The other three males, including Alex Nieves, Rolando Lopez and the defendant, crossed the street and were now walking on the east

sidewalk. The detectives exited their vehicle. Detectives Shattuck called out to Burgos and Ramos and asked them to hold up so that he could talk to them. Burgos and Ramos turned and stopped.

Detective Jones called out to Nieves, Lopez and the defendant, and asked them to "hold up" so that he could talk to them. Nieves and Lopez stopped. The defendant continued to walk away. Detective Jones again asked the defendant to hold up and the defendant responded by asking "what the fuck, we just said hi to you guys." As the defendant turned away from Detective Jones, looking east, the defendant placed his right hand into his right pants pocket. Detective Jones ordered the defendant to remove his hand from his pocket. As the defendant removed his hand from his pocket, as ordered, Detective Reardon observed a dark object sticking out of the defendant's right pants pocket.

Detectives Jones and Reardon asked Nieves, Lopez and the defendant to lay on the ground and place their hands out to the side. Detective Reardon began conducting a pat frisk of Nieves and Nieves began to stand to his feet. When Detective Reardon felt a hard object inside the front waist of Nieves, Detective Reardon forced Nieves to the ground and hand cuffed him. Detective Jones conducted a pat frisk of Lopez and then began too conduct a pat frisk of the defendant.

Detective Jones noticed that the defendant was attempting to use his body to shield his right side. Detective Jones rolled the defendant onto his left side and observed the dark colored grip of a handgun protruding from the defendant's right front pants pocket. As Detective Jones attempted to secure the handgun the defendant attempted to stand and remove Detective Jones' hand from his pocket. Detective Jones secured a grip

on the handle of the handgun and forced the defendant to the ground. The defendant continued to resist and was struck in the forehead with a flashlight. The defendant fell to the ground and was handcuffed. The handgun and ammunition were recovered from the person of the defendant.

## ARGUMENT

The stop and seizure of the defendant by members of the Holyoke Police Department violated the 4th Amendment to the United States Constitution. Before law enforcement agents may conduct a Terry stop of an individual, the agents must possess a reasonable suspicion of criminal conduct based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. *United States v. Kimball*, 25 F.3d 1, 6 (1st Cir. 1994). "Reasonable suspicion, like probable cause is dependent upon both the content of information possessed by police and its degree of reliability. Both factors – quantity and quality – are considered in the "totality of the circumstances – the whole picture," *United States v. Cortez*, 449 U.S. 411, 417 (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Alabama v. White*, 496 U.S. 325, (1990).

The government seeks to justify this warrantless intrusion by relying on what it deems a reliable cooperating individual who has provided information to Detective Duke and other law enforcement agents about narcotics operations and gang activity within the City of Holyoke. The government alleges that the information provided by this

cooperating individual was found in the past to be true, after corroborating it through police investigative techniques or was information law enforcement was already aware of.

The facts of this case strongly suggest that the law enforcement agents should have doubted the reliability of the information being provided. Despite the fact that the Government alleges that the cooperating individual was on a separate phone line with Detective Duke, who was in turn relaying information to Detective Jones, the information provided by the cooperating individual did not have any specific indicia of reliability and demonstrated an absence of specific knowledge of criminal activity. "Informant's tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams v. Williams*, 407 U.S. 143 (1972). The information provided by the cooperating individual was no more reliable than an anonymous tip and required further investigation before a forcible stop would have been permitted.

The only identifying information provided by the cooperating individual was that: there were five or six male Flat Bush Street Gang members in the area in a small tan or white four door vehicle; one with the name "Tito"; and one wearing a red t-shirt. That description fits dozens, if not hundreds, of males in the City if Holyoke. "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of

concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, \_\_\_\_\_ (2000). "We hold that an anonymous tip lacking indicia of reliability of the kind contemplated in *Adams* and *White* does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." *Id.* The information provided to Detective Duke by the cooperating individual did not in any way implicate the defendant in any criminal activity. Likewise, the officers were unable to corroborate any of the cooperating individual's allegations of criminal activity.

The cooperating individual also failed to accurately predict the criminal conduct of "Tito". The tip alleged that there was going to be a shooting at a specific location. That prediction never materialized. While there was a shooing in Holyoke on that date, there was nothing to link the tip to that shooting. The tip contained a description of a motor vehicle that was going to be used in a shooting. The motor vehicle never materialized. The police attempted to corroborate the tip by adding information received from Captain Higgins that the shooting was related to Flat Bush Street gang members shooting at Latin King gang members. As sad as it is to say, there is nothing terribly uncommon about rival gang members in the City of Holyoke trying to inflict harm on each other, including firing guns at each other.

## CONCLUSION

The police lacked the requisite specific and articulable facts to justify a warrantless seizure of the defendant. Accordingly, any and all evidence seized as a result of the warrantless seizure of the defendant must be suppressed.

DATED: February 7, 2006

                              The defendant,

                              Carlos Salvate

                              By _____
                              Jeffrey S. Brown
                              MacNicol, Tombs & Brown, LLP
                              393 Main Street, P.O. Box 985
                              Greenfield, MA 01302
                              413-772-8600
                              BBO# 558787

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CRIMINAL NO. 05-30026-MAP |
| | ) | |
| CARLOS SALVATE | ) | |

## AFFIDAVIT OF CARLOS SALVATE

I, Carlos Salvate, hereby swear and affirm that:

1. I am the defendant named in the above captioned matter.

2. On the evening of September 21, 2004 I was stopped, seized and searched by members of the Holyoke Police Department on N. East Street in the City of Holyoke. The officers involved did not have a warrant authorizing the search and seizure of my person. The police forcibly recovered a handgun and ammunition from my person.

3. At the time the police stopped, searched and seized me, there were several groups of Hispanic males on N. East Street in the area where I was stopped, seized and searched.

4. Immediately prior to being stopped, seized and searched, I was not engaged in any openly suspicious or criminal conduct that would have justified an investigation of my person by the police. I did not arrive at N. East Street in a four-door white or tan car. I drove myself to N. East Street.

5. During the course of my being stopped, searched and seized, some of the officers involved beat me to the point where I required hospitalization.

6. I am not a member of the Flat Bush street gang.

Signed under the pains and penalties of perjury this 7th day of February, 2006.

_____
Carlos Salvate